## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| MOBILE MINI, INC., | Civil No. 17-1684 (JRT/KMM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S PRELIMINARY INJUNCTON MOTION AND DENYING DEFENDANTS' MOTION TO DISMISS** |
| LIZ VEVEA, CITI-CARGO & STORAGE CO., INC. and LOGISTICS SERVICES, INC., | |
| Defendants. | |

Patrick R. Martin, **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**, 90 South Seventh Street, Suite 3800, Minneapolis, MN 55402, for plaintiff.

William M. Topka, **DOUGHERTY, MOLENDA, SOLFEST, HILLS & BAUER PA**, 14985 Glazier Avenue, Suite 525, Apple Valley, MN 55125, for defendants.

Plaintiff Mobile Mini, Inc. ("Mobile Mini") and Defendant Citi-Cargo & Storage Co., Inc. ("Citi-Cargo") are direct competitors in the portable storage business. Mobile Mini's former sales representative for the region encompassing Minnesota – Defendant Liz Vevea – left Mobile Mini in November 2016 and subsequently transitioned to working at Citi-Cargo after first possibly working for a brief period for Defendant Logistics Services, Inc. ("LSI"), which is owned by the same parent company as Citi-Cargo. Mobile Mini alleges that since LSI and Citi-Cargo hired Vevea, she has violated a number of provisions in a non-competition and non-solicitation agreement with Mobile Mini. Mobile Mini also alleges that LSI and Citi-Cargo tortiously interfered in the

contractual relationship between Vevea and Mobile Mini. Mobile Mini seeks a preliminary injunction to enforce the terms of that contract.

Vevea, Citi-Cargo, and LSI (collectively, "Defendants") move for dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(1). Defendants argue that the Court lacks subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy does not exceed $75,000.

Because it is not legally impossible that a factfinder could award damages in excess of $75,000, the Court will deny Defendants' motion to dismiss. Additionally, because Vevea likely solicited business from Mobile Mini's customers in violation of the contract and likely will continue to do so, and because those breaches could cause Mobile Mini irreparable harm, the Court will order some of Mobile Mini's requested preliminary injunctive relief.

## BACKGROUND

### I. FACTUAL HISTORY

Vevea worked as a Sales Representative at Mobile Mini's Lino Lakes office starting March 25, 2013. (Compl. ¶ 16, May 19, 2017, Docket No. 1; Decl. of Eric Martinez ("Martinez Decl.") ¶ 9, June 22, 2017, Docket No. 23.) As a condition of her employment at Mobile Mini, Vevea executed a Confidentiality, Non-Solicitation, Non-Compete and Inventions Agreement (the "Agreement"). (*See* Compl., Ex. A ("Agreement").) Under the Agreement, Vevea agreed to certain restrictions on her

activities in the Portable Storage Business[1] after the end of her employment with Mobile Mini, including:

    a. not to work in the Portable Storage Business at a location within fifty miles of Mobile Mini's Lino Lakes office for six months, (*id.* ¶ 3);

    b. not to make any Portable Storage Business sales to Company Customers[2] for nine months, (*id.* ¶ 4(b));

    c. not to directly or indirectly solicit Company Customers for the purpose of making portable storage sales, (*id.* ¶ 5(a), (b)), or make referrals for profit related to Company Customer, (*id.* ¶ 5(c)), for twelve months;

    d. not to poach current or former Mobile Mini employees with whom Vevea interacted to work for a competitor for twelve months, (*id.* ¶ 5(d)).

Vevea resigned from her position at Mobile Mini on November 8, 2016. (Compl. ¶ 28.) Less than six months later, Vevea started working for LSI at a location less than

---

[1] The Agreement defines "Portable Storage Business" as: "the design, manufacture, rental, sale, or lease of any of the following: portable storage containers, portable storage trailers, portable offices, as well as components of such containers, trailers, or offices." (Agreement at 1 n.3.)

[2] The Agreement defines "Company Customer" as:

any past, present, or prospective [Mobile Mini] customer (or customer representative or affiliate) with whom or which [Vevea] had [Mobile Mini] business related contact (in person, by phone, by videoconference, or in writing) at any time during the one (1) year period before [Vevea's] employment by [Mobile Mini] terminate[d], or about whom or which [Vevea] learned confidential information during that one (1) year period.

(Agreement at 3 n.4.)

fifty miles from Mobile Mini's Lino Lakes office.[3]  According to Defendants, LSI is a "logistics company that provides over the road, dedicated, and local transportation services as well as non-asset based trucking services including freight brokerage, i.e., booking a load and finding someone to haul it or moving loads with other people's assets."  (Decl. of Allen Ofstehage ("Ofstehage Decl.") ¶ 4, June 30, 2017, Docket No. 34.)  LSI and Citi-Cargo are owned by the same parent company, and they share the same registered business office address, principal executive office address, and CEO.  (Compl. ¶¶ 32-33 & Exs. C-D.)  The parties do not dispute that Citi-Cargo operates in the Portable Storage Business as Mobile Mini's direct competitor.  (*See id.* ¶ 9; Ofstehage Decl. ¶ 3.)

On May 11, 2017 – roughly six months after resigning from Mobile Mini – Vevea updated her LinkedIn account to reflect that she now works at Citi-Cargo.  (Compl. ¶ 36.)  The post stated:

> I'm excited to have joined the Citi-Cargo Sales Team!  We lease and sell clean, safe, and solid storage containers and offices.  We are locally owned and operated, with local live voice answer.  We offer same day delivery to the Metro, and have consistent rental rates with true monthly billing.  Give me a call today for a quote.  651-295-2982.

---

[3] The Court recognizes that the identity of Vevea's true employer between November 2016 and May 2017 is a matter in dispute that will be resolved through discovery.  For purposes of evaluating the amount in controversy in relation to Defendants' motion to dismiss, the Court assumes that it is possible that Mobile Mini will be able to prove that in reality, Vevea worked for Citi-Cargo before six months elapsed after her departure from Mobile Mini.  However, because Defendants submitted record evidence stating that Vevea worked for LSI and not for Citi-Cargo until May 2017, (*see* Decl. of Allen Ofstehage ("Ofstehage Decl.") ¶¶ 5-8, 11, 14, June 30, 2017, Docket No. 34), and because Mobile Mini has not rebutted this evidence with anything more than conjecture, the Court credits Defendants' evidence on this point for purposes of the motion for preliminary injunction.

(*Id. &* Ex. G.)  The post also included photos of Citi-Cargo portable containers.  (*Id.*, Ex. G.)  On May 17, 2017, Vevea put a second post on LinkedIn, which stated: "Call me today for a storage container quote from the cleanest, newest, safest and best container fleet in the State of Minnesota.  Let's connect!  651-295-2982."  (*Id.* ¶ 43 & Ex. H.)  Mobile Mini alleges that these posts were visible to Vevea's 500-plus LinkedIn connections, including one or more Company Customers or their representatives, and at least some if not all of these connections may have received an email notification about the new posts.  (Compl. ¶¶ 37-39, 43; Decl. of Elizabeth Vevea ("Vevea Decl.") ¶ 6, June 30, 2017, Docket No. 33.)

## II.    PROCEDURAL HISTORY

Mobile Mini initiated this action on May 19, 2017.  Mobile Mini asserts two legal claims: breach of contract against Vevea (Count I) and tortious interference with contractual relationship against Citi-Cargo and LSI (Count II).  (*Id.* ¶¶ 52-69.)  Mobile Mini seeks declaratory, injunctive, and monetary relief.  (*Id.* at 15-17.)

On June 1, 2017, Defendants moved to dismiss the complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

On June 22, 2017, Mobile Mini filed a motion for preliminary injunction.[4]  Mobile Mini asks the Court to restart the clock on the non-competition and non-solicitation

---

[4] Mobile Mini's motion is styled as a motion for a temporary restraining order, or alternatively, a preliminary injunction.  Because Defendants had notice and an opportunity to respond and because Mobile Mini seeks injunctive relief extending longer than fourteen days, "the Court will consider [Mobile Mini's] motion as one requesting a preliminary injunction under [Fed. R. Civ. P.] 65(b) rather than a temporary restraining order under Rule 65(a)."

(Footnote continued on next page.)

provisions in the Agreement to commence on the date of this Order and run for the same time periods specified in the Agreement. Alternatively, Mobile Mini asks the Court to extend the contractual time limits until a permanent injunction hearing.

## ANALYSIS

### I.  MOTION TO DISMISS

#### A.  STANDARD OF REVIEW

"A motion to dismiss pursuant to [Fed. R. Civ. P.] 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims." *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013). Under 28 U.S.C. § 1332(a), the Court may exercise jurisdiction over completely diverse parties[5] "where the matter in controversy exceeds the sum or value of $75,000." "The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002). On the other hand, there is no subject-matter jurisdiction if an award exceeding $75,000 is "legally impossible." *Hillesheim v. Casey's Retail Co.*, No. 16-61, 2016 WL 3676164, at *2 (D. Minn. July 6, 2016); *see also Kopp*, 280 F.3d at

_____
(Footnote continued.)

*Lifetime Fitness, Inc. v. Wallace*, No. 12-740, 2012 WL 1517262, at *2 (D. Minn. Apr. 30, 2012).

[5] There is no dispute that there is complete diversity between Mobile Mini and Defendants. Mobile Mini is incorporated in Delaware with its principal place of business in Arizona. (Compl. ¶ 1.) Vevea is a citizen of Minnesota, and Citi-Cargo and LSI are both Minnesota corporations with their principal places of business in Minnesota. (*Id.* ¶¶ 2-4.)

884-85 (noting that a complaint should be dismissed for lack of subject-matter jurisdiction if there is "legal certainty" that a factfinder could not award damages exceeding $75,000 (citation omitted)). "If the defendant challenges the plaintiff's allegations of the amount in controversy, then the plaintiff must establish jurisdiction by a preponderance of the evidence." *Kopp*, 280 F.3d at 884.

In deciding a Rule 12(b)(1) motion, the Court must first "distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a factual attack, the court "inquires into and resolves factual disputes," *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002), and is free to "consider[ ] matters outside the pleadings," *Osborn*, 918 F.2d at 729 n.6. The nonmoving party in a factual challenge "does not have the benefit of 12(b)(6) safeguards." *Id.*

Here, the parties have submitted declarations and exhibits that go beyond information in the pleadings, so the challenge is a factual as opposed to a facial challenge to jurisdiction.

### B. AMOUNT IN CONTROVERSY

Defendants argue there is no subject-matter jurisdiction because the amount in controversy does not exceed $75,000. There are two components to a potential award for

Mobile Mini in the event of success on the merits – (a) actual damages, representing lost profits or some other estimate of actual harm to Mobile Mini's business as a result of Vevea's alleged breach of contract, and (b) attorney fees incurred litigating the breach-of-contract claim. As explained below, the Court finds that it is "not legally impossible" that there could be actual damages plus attorney fees at stake that exceed $75,000. *See Hillesheim*, 2016 WL 3676164, at *2.

### 1. Actual Damages

According to Mobile Mini, Vevea was responsible for over $1.2 million in sales with roughly 254 customers over the 3.5 years that she worked as a Mobile Mini Sales Representative. (Compl. ¶ 27; Martinez Decl. ¶ 13.) Mobile Mini also represents that at some point after Vevea left the company, two customers Vevea worked with, who represent a combined $130,000 in 2016 sales for Mobile Mini, have either decreased the volume of their sales with Mobile Mini or have informed the company that they are considering taking their business elsewhere. (Decl. of Rebecca Lautenschlager ¶ 6, June 22, 2017, Docket No. 22.) Based on publicly available data, Mobile Mini's overall profit margin was approximately 1% in 2015 and 9% in 2016. (Decl. of Al Ofstehage ¶ 6 & Ex. A, June 1, 2017, Docket No. 13.)

While there is no direct evidence before the Court at this time demonstrating that Mobile Mini has actually lost customers or missed sales opportunities because of Vevea's alleged breaches of the Agreement, it does not stretch the imagination that Vevea's alleged solicitations of Mobile Mini customers could yield hundreds of thousands of dollars in new business for Citi-Cargo as well as loss of customer goodwill at Mobile

Mini. While it may be unlikely that Mobile Mini will continue to generate a 9% profit margin for the next few years, this is also "not legally impossible." *See Hillesheim*, 2016 WL 3676164, at *2. Given these possibilities, along with the fact that loss of customers may weaken a company's sales for the years it may take to bring the customers back or to find replacement customer, the Court finds it is not legally certain that Mobile Mini's actual damages due to an alleged past or threatened breach could not exceed $75,000.

### 2. Attorney Fees

In addition to the potential for actual damages exceeding $75,000, reasonable attorney fees incurred litigating the breach-of-contract claim are recoverable damages for tortious interference. *See Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 363 (Minn. 1998) (stating that courts may "award attorney fees as damages if the defendant's tortious act thrusts or projects the plaintiff into litigation with a third party"); *see also St. Jude Med. S.C., Inc. v. Biosense Webster, Inc.*, No. 12-621, 2014 WL 3573620, at *2-3 (D. Minn. July 18, 2014) (recognizing that under Minnesota law as established in *Kallok*, damages for a tortious interference claim against a new employer may include the attorney fees incurred in enforcing a non-compete agreement against a former employee). *See generally Capitol Indem. Corp. v. Miles*, 978 F.2d 437, 438 (8th Cir. 1992) (recognizing that when attorney fees are recoverable as damages, they may be taken into account to determine whether the jurisdictional threshold has been met in a diversity case).

Mobile Mini provided the Court with a declaration stating that it has incurred $30,000 in attorney fees thus far. (Decl. of Patrick R. Martin ("Martin Decl.") ¶ 6,

June 22, 2017, Docket No. 27.)  It is "not legally impossible" that future attorney fees incurred to litigate the breach-of-contract claim could exceed an additional $45,000.  *See Hillesheim*, 2016 WL 3676164, at *2; *see also Biosense Webster, Inc.*, 2014 WL 3573620, at *5 (awarding a successful plaintiff in a tortious interference trial related to breach of a non-compete agreement an award of $662,018.92 in attorney fees damages under *Kallok*); *Ecolab, Inc. v. Ford*, No. C4-94-2179, 1995 WL 238837, at *3 (Minn. Ct. App. Apr. 25. 1995) (affirming a trial court award of $410,213.59 in attorney fees and costs following a plaintiff's successful litigation of a non-compete agreement).[6]

To conclude, because an award of actual damages, recoverable attorney fees, or some combination of the two could legally exceed $75,000, the Court will deny Defendants' motion to dismiss for lack of subject-matter jurisdiction.[7]

---

[6] Defendants argue that the Court should follow the Seventh Circuit's decision in *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958-59 (7th Cir. 1998), and decline to consider reasonable future attorney fees when determining whether the matter in controversy exceeds $75,000 for purposes of evaluating jurisdiction.  While the Eighth Circuit has not squarely decided the matter in a reported opinion, the Court notes that the overwhelming weight of local authority recognizes that reasonable future attorney fees, when recoverable as damages, are part of the "amount in controversy" and should be considered to establish diversity jurisdiction.  *See, e.g.*, *Skoda v. Lilly USA LLC*, 488 F. App'x 161, 164 (8th Cir. 2012); *Geronimo Energy, LLC v. Polz*, No. 16-3901, 2017 WL 758924, at *2 (D. Minn. Feb. 27, 2017); *Mueller v. RadioShack Corp.*, No. 11-0653, 2011 WL 6826421, at *2 (D. Minn. Dec. 28, 2011); *Delsing v. Starbucks Coffee Corp.*, No. 08-1154, 2010 WL 1507642, at *3 (D. Minn. Apr. 14, 2010); *Feller v. Hartford Life & Accident Ins. Co.*, 817 F. Supp. 2d 1097, 1104-08 (S.D. Iowa 2010).  The Court finds these cases persuasive and rejects the Seventh Circuit's position on this question.

[7] Because the Court finds there is subject-matter jurisdiction, the Court will deny Defendants' request for attorney fees and costs pursuant to 28 U.S.C. § 1927.

## II. PRELIMINARY INJUNCTION

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of preliminary injunctions. The Court must consider four primary factors in determining whether a preliminary injunction should be granted under Rule 65(b): (1) the likelihood of the moving party's success on the merits; (2) the threat of irreparable harm to the moving party; (3) the state of balance between the alleged irreparable harm and the harm that granting the injunction would inflict on the other party; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). This analysis was designed to determine whether the Court should "intervene to preserve the status quo" until it determines the merits of the case. *Id.* "The burden of establishing the propriety of a preliminary injunction is on the movant." *Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

### A. APPLICATION OF THE *DATAPHASE* FACTORS

#### 1. Likelihood of Success on the Merits[8]

There is a relatively strong likelihood that Mobile Mini will succeed on its claim that Vevea breached and/or will breach ¶ 5(a) of the Agreement, which bars Vevea from directly or indirectly soliciting Company Customers for twelve months. To succeed on a claim of breach of a non-compete contract in Delaware, a plaintiff must ultimately prove (1) the existence of a valid, enforceable contract; (2) breach of a contractual obligation by

---

[8] The parties agree that Delaware substantive law applies to the breach-of-contract claim, while Minnesota substantive law applies to the tortious interference claim.

the defendant; and (3) damages.[9]  *Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011).

First of all, Defendants do not challenge, for purposes of this motion, the enforceability of the Agreement.  Without definitively deciding the issue at this point, the Court also finds it likely that the Agreement is enforceable under Delaware law.  *See Research & Trading Corp. v. Pfuhl*, Civ. A. No. 12527, 1992 WL 345465, at *6 (Del. Ch. Nov. 18, 1992) (noting that under Delaware law, a non-compete agreement is valid if it is "[(1)] valid under ordinary contract principles . . . [; (2)] its duration is reasonably limited temporally[; (3)] its scope is reasonably limited geographically[; (4)] its purpose is to protect legitimate interests of the employer[; and (5)] its operation is such as to reasonably protect those interests").  The Agreement is relatively limited in geographical scope and duration, and Mobile Mini appears to have a legitimate interest in ensuring Vevea's replacement has the opportunity to establish himself or herself before Vevea engages in robust direct competition in the same market on behalf of another company.

Here, Vevea made two blatant sales pitches on LinkedIn on behalf of Citi-Cargo before the expiration of the Agreement's non-solicitation provision.  Contrary to Defendants' arguments, the posts are not mere status updates announcing Vevea's new position and contact information – if that were the extent of the posts, then there would likely not be a breach of contract.  *See Arthur J. Gallagher & Co. v. Anthony*, No. 16-

---

[9] To the extent Defendants argue that Mobile Mini's likelihood of success is low for failure to allege damages, the Court rejects this argument.  Mobile Mini alleges damages in the form of future lost profits, loss of customers, loss of customer goodwill, and harm to reputation.

284, 2016 WL 4523104, at *15 (N.D. Ohio Aug. 30, 2016) (holding that a press release posted on LinkedIn and Twitter announcing that an employer had hired a new employee was not a solicitation); *Invidia, LLC v. DiFonzo*, No. MICV20123798H, 2012 WL 5576406, at *5 (Mass. Super. Ct. Oct. 22, 2012) (holding that a Facebook post announcing an employee's new job was not a solicitation).

Instead of merely announcing a job change, the language of the posts here demonstrates that Vevea's purpose was to entice members of Vevea's network to call her for the purpose of making sales in her new position at Citi-Cargo. *See Bankers Life & Cas. Co. v. Am. Senior Benefits LLC*, No. 1-16-0687, 2017 WL 2799904, at *4 (Ill. App. Ct. June 26, 2017) (noting that the key consideration when determining whether a social media post is a "solicitation" is "the content and the substance" of the post). The Court also finds significant a declaration from the Branch Manager at Mobile Mini's Lino Lakes office, which states that when Vevea worked at Mobile Mini, he and Vevea "discussed using LinkedIn as a marketing tool, to advertise Mobile Mini's products and services," and Vevea did in fact "use[] LinkedIn for that purpose during her employment at Mobile Mini." (Martinez Decl. ¶ 12.)

The information before the Court also indicates that in all likelihood, Vevea's LinkedIn network includes at least one, if not many, Company Customers. Thus, the posts likely amount to direct solicitation of business from Company Customers in violation of ¶ 5(a) of the Agreement.

In addition to the alleged past breaches of the non-solicitation provision, the Court also finds that Defendants threaten to breach ¶ 5(a) in the future. Whereas Defendants

assert that the Agreement's non-solicitation provision extends for nine months, (*see* Defs.' Mem. of Law in Opp'n to Mot. for TRO and/or Prelim. Inj. at 3, June 30, 2017, Docket No. 32), the plain language of the Agreement is clear that this restriction extends for twelve months, (Agreement ¶ 5(a)).  The Court finds Defendants' open disagreement with the plain language of the contract as, quite simply, a threat of future breach.

Because Vevea's LinkedIn posts likely violated the Agreement, and because Defendants openly misinterpret the applicable time limit for ¶ 5(a) in the Agreement in a manner strongly implying that Vevea may begin intentionally soliciting Company Customers after a mere nine months, the Court finds a strong likelihood of success on Mobile Mini's breach-of-contract claim.[10]

---

[10] The Court finds there is insufficient information before the Court at this time to conclude that Mobile Mini is likely to succeed on its other claims.  First, there is only very weak circumstantial evidence that Vevea worked for Citi-Cargo before the expiration of the six-month non-compete period in violation of ¶ 3.  Second, there is no evidence at this time that Vevea has made any sales to Company Customers on behalf of Citi-Cargo in violation of ¶ 4(b).  The fact that two Company Customers have either decreased business with Mobile Mini or are considering taking their business elsewhere is insufficient to establish that Vevea had anything to do with these customers' decisions or that Mobile Mini has actually lost any customers or profits to a competitor at all.  Third, Mobile Mini makes a conclusory allegation in the complaint that Vevea violated the prohibition on poaching Mobile Mini employees in violation of ¶ 5(d) – an allegation neither party briefed.  Mobile Mini has not demonstrated likelihood of success on that claim.

And lastly, Citi-Cargo and LSI maintain that they have made efforts to try to ensure that Vevea does not breach the Agreement, and there is evidence that they instructed Vevea not to take any calls from Company Customers or to refer those calls back to Mobile Mini while the Agreement still applies.  (Compl. Ex. C; Vevea Decl. ¶ 4.)  Given this as-yet undisputed evidence, for purposes of preliminary relief, the Court finds Mobile Mini has failed to establish a likelihood of success on the claim of tortious interference because there is little evidence demonstrating intent.  *See Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994) (laying out the elements of a tortious interference claim, including that the tortfeasor intentionally procured the breach).

### 2. Irreparable Harm to Mobile Mini

To succeed in an action for a preliminary injunctive relief, a movant must first show irreparable harm that is not compensable with money damages. *Travel Tags, Inc. v. UV Color, Inc.*, 690 F. Supp. 2d 785, 798 (D. Minn. 2010). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Loss of reputation and goodwill can be irreparable harm. *See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) (holding even though they are difficult to quantify, loss of intangible assets constitutes irreparable injury); *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) (loss of consumer goodwill can be irreparable harm).

Vevea's past breaches and threatened future breaches of the Agreement's non-solicitation provision pose a danger of irreparable harm to Mobile Mini in the form of lost future customers and loss of goodwill and reputation. While Vevea states that she has been referring and will continue to refer calls from Company Customers to Mobile Mini, there is at least some chance that the fact that the LinkedIn posts have been up since May 2017 has harmed Mobile Mini's reputation and will lead to lost customers in the future, so Defendants' efforts to comply with the Agreement may be insufficient to prevent harm. And to the extent Vevea may begin openly soliciting Company Customers before the expiration of the twelve-month non-solicitation provision, the threat of irreparable harm caused by that breach is clearly present. Thus, this factor also weighs in favor of granting a preliminary injunction.

### 3. Balance of the Equities and Public Interest

There would most likely be some impact on Citi-Cargo's sales if Vevea is enjoined from soliciting Company Customers for twelve rather than nine months, but this is a harm that Vevea agreed to accept when she executed the Agreement, and that Citi-Cargo should have been aware of when it hired Vevea with full knowledge of the Agreement. Moreover, simply enforcing the relatively short time limits contained in the Agreement, including requiring that Vevea remove the offending LinkedIn posts, would not restrict Citi-Cargo from operating in the Portable Storage Business or making sales to Company Customers without Vevea's involvement. Ordering such relief also would not preclude Vevea from making a living or working in the Portable Storage Business in Minnesota. There is also public interest in favor of enforcing valid contracts. *Benfield, Inc. v. Moline*, 351 F. Supp. 2d 911, 919 (D. Minn. 2004). And the potential irreparable harm to Mobile Mini in the event that Vevea is permitted to solicit Company Customers before the expiration of the non-solicitation provision is not insignificant.

On the other hand, Mobile Mini seeks relief far broader than simply removal of Vevea's LinkedIn posts and compliance with the Agreement's various restrictions until their contractual expiration date. Mobile Mini asks the Court to restart the clock on most of the key restrictions found in the Agreement, such that the six-month bar on work in the Portable Storage Business, the nine-month bar on sales to Company Customers, and the twelve-month bar on soliciting Company Customers' business would all re-commence upon the filing of this Order. Mobile Mini relies on a provision in the Agreement stating:

> [Vevea] understand[s] and agree[s] that if [she] breach[es] any provision of this Agreement containing a term of months or years, the term may be extended by a court if the court enters an injunction restraining further breach or otherwise awards any kind of relief or remedy to the Company so [Vevea doesn't] get credit for the time [Vevea] was breaching the Agreement.

(Agreement ¶ 7(e).) The Court understands this provision to allow but not require the Court to extend the Agreement's key terms in the event of a proven breach.

Here, the Court finds that restarting the clock on the Agreement's key time limits would amount to a windfall for Mobile Mini that is not in the interests of justice. *See Dataphase*, 640 F.2d at 113 ("[T]he question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."). To grant the sweeping relief Mobile Mini requests would amount to not merely preserving the status quo, but expanding Mobile Mini's rights under the Agreement related to terms that Vevea likely has not breached. Thus, if the Court granted the requested relief, the negative financial effects on Vevea and Citi-Cargo would likely grow to an unacceptable level, and the balance of the equities would swing in Defendants' favor.

Additionally, Defendants have indicated a willingness to try to comply with the Agreement by directing Vevea to refer Company Customer calls to Mobile Mini.[11] Defendants' voluntary remedial action, though insufficient in this instance to ameliorate all harms caused by Vevea's LinkedIn posts, weighs in Defendants' favor when

---

[11] Citi-Cargo even conceded that if it had been aware that a notification of Vevea's LinkedIn posts would be sent to Company Customers, it would not have given Vevea permission to make the posts. (Ofstehage Decl. ¶ 14.)

balancing the equities. *See Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 489 (8th Cir. 1993).

While Mobile Mini has a right to protect its business from competition as set out in the Agreement, it may not avoid competing with Vevea forever, and judicially intervening to substantially extend the duration of the Agreement's restrictions would not be in the public interest. "[T]he Court notes that in Minnesota '[restrictive] covenants [in employment contracts] are looked upon with disfavor because their enforcement decreases competition in the marketplace and restricts the covenantor's right to work and ability to earn a livelihood.'" *GreatAmerica Leasing Corp. v. Dolan*, No. 10-4631, 2011 WL 334829, at *3 (D. Minn. Jan. 31, 2011) (quoting *Jim W. Miller Constr., Inc. v. Schaefer*, 298 N.W.2d 455, 458 (Minn. 1980)). Thus, the Court will issue an injunction enforcing the Agreement's terms as written and requiring Vevea to remove the LinkedIn posts. But given the relatively minor extent of the breaches here and the complete lack of a showing of actual damages thus far, the Court finds little justification for granting the broad relief Mobile Mini requests and thus will deny all other forms of requested injunctive relief.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss for Lack of Jurisdiction [Docket No. 9] is **DENIED**.

2.	Plaintiff Mobile Mini, Inc.'s Motion for Temporary Restraining Order and/or Preliminary Injunction [Docket No. 18] is **GRANTED in part** and **DENIED in part**, as follows:

　　a.	Until further order of this Court, a preliminary injunction is hereby entered against defendants as follows:

(1) Any posts on Vevea's LinkedIn account that advertise Citi-Cargo's products or services or request viewers to contact Vevea for the purpose of providing such products or services (including the provision of a quote) shall be removed.[12] Vevea is enjoined from creating any similar posts advertising Citi-Cargo's products or services on LinkedIn until the expiration of the non-solicitation provision in the Agreement, on November 8, 2017. This restriction applies with equal force to any other social media sites other than LinkedIn to the extent that Vevea's friend list or network on such a site includes at least one Company Customer or their representative. This restriction does not limit Vevea's ability to post mere "status updates" listing her place of work and contact information.

(2) Vevea is otherwise enjoined from violating any other provision in the Mobile Mini, Inc. Confidentiality, Non-Solicitation, Non-Compete and Inventions Agreement for Branch Managers, Plant Managers, and Salespeople ("Agreement") until that provision's expiration, as provided in the Agreement. Accordingly, for example, Vevea shall abide by the bar on making sales to Company Customers found in ¶ 4(b) until August 8, 2017, while

---

[12] This includes Vevea's two LinkedIn posts documented for the Court, made on or around May 11, 2017, and May 17, 2017.

>> the non-solicitation provision and other provisions found in ¶ 5 remain in effect until November 8, 2017.
>
> b. In accordance with Fed. R. Civ. P. 65(c), the preliminary injunction shall become effective upon Mobile Mini's posting a bond with the Clerk of Court in the amount of Ten Thousand Dollars ($10,000) for the payment of such costs and damages as may be incurred or suffered by Defendants in the event Defendants are found to have been wrongfully enjoined.
>
> c. The motion is **DENIED** in all other respects.

DATED: July 25, 2017　　　　　　　　　_____s/John R. Tunheim_____
at Minneapolis, Minnesota.　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　　United States District Court